# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| VIAHART, LLC, | § | |
| | § | |
| Plaintiff, | § | **CIVIL ACTION NO. 6:18-CV-00604-RWS** |
| | § | |
| v. | § | |
| | § | |
| DOES 1–54, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge (the "Report"), which contains her findings, conclusions and recommendations regarding Plaintiff's *Ex Parte* Motion for Entry of a (1) Temporary Restraining Order, (2) Asset Restraining Order, (3) Expedited Discovery Order and (4) Service of Process by Email (Docket No. 3), recommending that Plaintiff's Motion be denied. Having made a *de novo* review of the written objections filed by Plaintiff, the Court concludes that the findings of the Magistrate Judge are correct and the objections are without merit. For the reasons stated below, Plaintiff's objections are **OVERRULED** and Plaintiff's motion (Docket No. 3) is **DENIED**. Accordingly, the Magistrate Judge's Report (Docket No. 11) is **ADOPTED**.

## I.   Standard of Review and Reviewability

The Court reviews objected-to portions of the Magistrate Judge's Report and Recommendation *de novo*. *See* FED. R. CIV. P. 72 and 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). In conducting a *de novo* review, the Court examines the entire record and makes an independent assessment under the law.

*Douglass v. United Servs. Automobile Assn*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

As part of this review, "[t]he judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); *see* FED. R. CIV. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."). "It is clear that the district court has wide discretion to consider and reconsider the magistrate judge's recommendation. In the course of performing its open-ended review, the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge." *Performance Autoplex II. Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (quoting *Freeman v. Cty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998)). The Fifth Circuit "suggested several factors that a court should consider in deciding whether to accept additional evidence after a magistrate judge's recommendation has issued . . . ." *Id.* (citing *Freeman*, 141 F.3d at 853). These factors include:

> (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the . . . motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted.

*Id.*

## II. Additional Evidence

As an initial matter, Plaintiff requests the Court receive additional evidence in support of its *ex parte* motion. Docket No. 15 at 2. Plaintiff offers additional evidence that includes, but is not limited to, the affidavit of Viahart's CEO, Molson L. Hart (Docket No. 15-3) and its supporting exhibits (Docket Nos. 15-4, 15-5, 15-6).

The factors identified by the Fifth Circuit generally weigh in favor of allowing Plaintiff to supplement the record. First, the affidavit of Molson L. Hart clarifies evidence previously submitted, and Plaintiff states the "evidence was not submitted previously because Plaintiff was not fully aware of . . . the specific concerns" of the Court. Docket No. 15 at 2. Second, the additional information is relevant to Plaintiff's *Ex Parte* Motion and addresses personal jurisdiction concerns raised by the Magistrate Judge. Finally, this is an *ex parte* proceeding, and, as such, the third and fourth factors tend to also favor admission because the Defendants have not responded nor will the Defendants be prejudiced by the Court receiving the additional evidence. Accordingly, all the factors favor admission and the Court shall consider Plaintiff's additional evidence as part of its *de novo* review.

### III.     Plaintiff's Objections

In its objections, Plaintiff argues that: (1) the ongoing infringing sales of counterfeit goods results in immediate and irreparable injury to Plaintiff; (2) the Hague Convention is inapplicable because Defendants' addresses are not known or obtainable; and (3) service by email is reasonably calculated to reach Defendants because Plaintiff has recently purchased infringing products from each Defendant's merchant account. *See* Docket No. 15. The Court addresses each in turn.

Rule 65 of the Federal Rules of Civil Procedure authorizes the Court to issue a temporary restraining order without written or oral notice to the adverse party only if:

(A)     specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)     the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). The stringent requirements of Rule 65(b) "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974).

    A.    *Immediate and Irreparable Injury*

Plaintiff alleges that "suffering injuries due to ongoing trademark-infringing sales of knockoff goods are typical of the circumstances where immediate and irreparable injury result." Docket No. 15 at 3. Plaintiff further argues that it satisfied Rule 65(b)'s stringent requirements and points to *Chanel, Inc. v. Partnerships & Unincorporated Associations*, CV H-12-2085, 2012 WL 3527147, at *1 (S.D. Tex. Aug. 14, 2012) and the declaration of Plaintiff's counsel, David Gulbransen, for support. Docket No. 15 at 3.

In his declaration, Mr. Gulbransen states, "[i]n my personal experience working with brand owners who have identified websites and webstore listings selling counterfeit products, if Plaintiff proceeds on normal advance notice prior to seeking to preclude modification of control of the webstores, the Defendants can easily and quickly transfer data and content to other Webstores." Gulbransen Decl. ¶ 3. Mr. Gulbransen further states that "Defendants will also transfer assets from U.S.-based financial institutions to offshore accounts outside the jurisdiction of this Court." *Id.* Mr. Gulbransen concludes that "[s]uch actions by Defendants will effectively thwart Plaintiff's ability to obtain meaningful relief and will continue to irreparably harm Plaintiff through Defendants' sale of Counterfeit Products." *Id.*

In *Chanel, Inc. v. Partnerships & Unincorporated Associations*, the court granted an *ex parte* TRO finding that "[b]ecasue of the infringement of the Chanel Marks, plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted." *Chanel, Inc.*, 2012 WL 3527147, at *1. The court noted "[i]t clearly appears from the following specific

facts, as set forth in plaintiff's Complaint, plaintiff's Application for TRO, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to plaintiff . . . before defendants can be heard in opposition unless plaintiff's request for *ex parte* relief is granted . . . ." *Id.* at *2. The court then noted that "[t]here is good cause to believe that if plaintiff proceeds on notice to defendants on this Application for TRO, defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites . . . ." *Id.* The *Chanel, Inc.* plaintiff's application for TRO[1] explained that "[s]ince the Defendants' Websites are completely under their control, the Defendants can easily and quickly modify registration data and content, change hosts and, more importantly, redirect traffic to other websites they control." Docket No. 15-2 at 18. Chanel provided specific examples, supported by declaration of its counsel, of incidents where Chanel brought an action against domain names and, after the domain name owners received notice of the suit, the owners redirected all traffic to new domain names. *Id.* at 19.

In contrast to *Chanel, Inc.*, the court in *Starbuzz Tobacco, Inc. v. Namou* denied an *ex parte* application for a TRO where the plaintiff failed to submit "evidence demonstrating that 'notice to the defendant[s] would render fruitless the further prosecution of the action.' " No. 13CV1539-MMA (KSC), 2013 WL 3353851, at *4 (S.D. Cal. July 2, 2013) (citation omitted). There, the plaintiff's "generally" argued that "most infringers who are faced with such clear allegations of infringement and the imminent seizure of property and records are highly likely to destroy evidence in an effort to hide their wrongdoing." *Id.* To support this statement, the *Starbuzz* Plaintiff relied on the declaration of its counsel which provided, "In my experience,

---

[1] Plaintiff submitted the *Chanel, Inc.* application for TRO as an attachment to its' Objections to the Report and Recommendation (Docket No. 15-2).

accused infringers served with notice of an application for a temporary restraining order and/or preliminary injunction will attempt to destroy evidence in their possession in an effort to hide their wrongdoing." *Id.* The *Starbuzz* court found plaintiff's "conclusory argument and the statements made by its counsel . . . insufficient to justify the issuance of a TRO without notice to Defendants." *Id.*

The court in *D.light Design, Inc. v. Boxin Solar Co., Ltd.* also denied a plaintiff's *ex parte* application for a TRO where the plaintiffs "failed to give an adequate explanation as to why proceeding on an *ex parte* basis . . . is appropriate." No. C-13-5988 EMC, 2014 WL 12659907, at *1 (N.D. Cal. Jan. 2, 2014). That court noted "[t]here are simply conclusory statements in the supporting declarations stating that, if notice is given, Defendants are likely to dissipate assets." *Id.*

Here, Plaintiff's general and conclusory statements that, absent *ex parte* relief, "Defendants can easily and quickly transfer data and content to other Webstores[ ]" and "will transfer assets from U.S.-based financial institutions to offshore accounts outside the jurisdiction of this Court[,]" are not sufficient to justify proceeding *ex parte*. Gulbransen Decl. ¶ 3; *see Starbuzz Tobacco, Inc.*, 2013 WL 3353851, at *4; *D.light Design, Inc.*, 2014 WL 12659907, at *1. Rule 65(b) only permits an *ex parte* TRO to issue where "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before the adverse party can be heard in opposition*." FED. R. CIV. P. 65(b)(1)(A) (emphasis added). Plaintiff's general and conclusory statements do not satisfy Rule 65(b)'s stringent requirements. *See* FED. R. CIV. P. 65(b); *Starbuzz Tobacco, Inc.*, 2013 WL 3353851, at *4; *D.light Design, Inc.*, 2014 WL 12659907, at *1.[2]

---

[2] The declaration of Mr. Hart (Docket No. 15-3 ("Hart. Decl.")), submitted with Plaintiff's Objections to Report and Recommendation alleviates some of the Court's concerns regarding whether the Court has personal jurisdiction

B.  *Applicability of the Hague Convention*

Plaintiff's objections next contend that the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters (the "Hague Convention") is not applicable because Defendants' physical addresses are not known and are not obtainable. Docket No. 15 at 4–5. If the Hague Convention applies, "Federal Rule of Civil Procedure 4(f)(1) provides that use of Hague Convention procedure is 'mandatory if available at the place of service.' " *RPost Holdings, Inc. v. Kagan*, No. 2:11-cv-238-JRG, 2012 WL 194388, at *1 (E.D. Tex. Jan. 23, 2012) (citing *Gramercy Ins. Co. v. Kavanagh*, No. 3:10-cv-1254, 2011 WL 1791241, at *1 (N.D. Tex. May 10, 2011)). However, "the Convention shall not apply where the address of the person to be served with the document is not known." *Id.* (citing *Gramercy Ins. Co.*, 2011 WL 1791241, at *1).

Plaintiff argues: (1) "Defendants . . . are sellers on sites such as eBay, Amazon, Wish, and Aliexpress[;]" (2) "[t]hese sites do not publish the physical addresses of sellers[;]" (3) "some sites have sellers enter an address at account creation," but "these sites do not . . . verify any physical addresses provided by sellers . . . ;" and (4) "[t]he physical addresses associated with seller accounts, such as may be found on invoices or packing slips, are typically the addresses associated with shipping centers or the marketplaces themselves, not the individual sellers." *See* Doc. No. 15 at 4 (citing Hart Decl. ¶¶ 11–13).

Plaintiff's blanket statements that all 73 named Defendants' physical addresses are unknown and are not obtainable is not persuasive. Mr. Hart's declaration indicates that "[e]ven when purchasing product from the defendants as part of our program to identify counterfeiters, the invoices and packing slips feature information from the marketplace—not information

---

over the Defendants. *See* Hart Decl. ¶ 9. However, this does not change the fact that Plaintiff failed to satisfy Rule 65(b).

specific to the seller." Hart Decl. at ¶ 12. However, the exhibits attached to Mr. Hart's declaration show Plaintiff purchased a presumably counterfeit Viahart product from a seller on Amazon named "Bwon." Docket No. 15-6 at 25. Also attached to Mr. Hart's declaration were photographs of many of the packages containing allegedly counterfeit products after they were delivered to Plaintiff. *See* Docket No. 15-6 at 44–46. In one of the photographs, there is a box with what appears to be an address for "Bwon Toys." *See* Doc. No. 15-6 at 45. It thus appears that at least one seller's address is ascertainable. Without a more diligent effort to determine Defendants' physical addresses, the Court is not persuaded that all 73 named Defendants' addresses are not known or obtainable. *See RPost Holdings, Inc.*, 2012 WL 194388, at *2 (noting the Plaintiff "reasonably worked to comply with the Hague Convention" and attempted to determine the defendant's address prior to finding the Hague Convention inapplicable); *Chanel, Inc. v. v. Zhong Zhibing*, No. 2:09-cv-02835-cgc, 2010 WL 1009981, at *3 (W.D. Tenn. Mar. 17, 2010) ("[Plaintiff] has *attempted to verify Defendant's addresses* and has determined that each is fraudulent. Because the address of Defendants is not known, the Hague Service Convention does not apply to the present suit." (emphasis added)).[3] Accordingly, Plaintiff shall diligently attempt to locate Defendants' physical addresses and execute service on Defendants in compliance with the Hague Convention procedures.

C. *Service by Email*

Plaintiff next contends service by email is reasonably calculated to apprise Defendants of the instant action because "Plaintiff has done all it can do to locate physical addresses of the defendants[ ]" and "has recently transacted business directly with each of these Defendant's merchant accounts to purchase infringing products . . . ." Docket No. 15 at 6.

---

[3] To the extent that expedited discovery is necessary to determine physical addresses for the Defendants, that relief is granted.

"Any method of service of process arrived at pursuant to Rule 4(f)(3) must comport with constitutional notions of due process." *RPost Holdings, Inc.*, 2012 WL 194388, at *2 (citing *Gramercy Ins. Co.*, 2011 WL 1791241, at *1; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)). To satisfy this requirement, the method of service must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at *2 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 312 (1950)).

Plaintiff first argues that the court in *RPost Holdings, Inc.*, allowed service by email "simply because the plaintiff had previously communicated with the defendant by email . . . ." Docket No. 15 at 5 (citing *RPost Holdings, Inc.*, 2012 WL 194388, at *2). In *RPost Holdings, Inc.*, the plaintiff asked the court to authorize alternative service of process under Federal Rule of Civil Procedure 4(f)(3) by requesting permission to serve the defendant by electronic mail. *Id.* at *1. There, the *RPost Holdings, Inc.* plaintiff demonstrated that it had "successfully reached [the defendant] through an email address" and "[w]ithin days of sending an email to [the defendant], [the plaintiff's] counsel received a response from an attorney in Israel . . . stating that he represented [the defendant] . . . ." *Id.* at *1. The *RPost Holdings, Inc.* plaintiff also demonstrated that its counsel had "exchanged several emails" with the defendant's counsel, "but [defendant's counsel] refused to accept the Summons and Complaint on [the defendant's] behalf and declined to provide a valid address . . . ." *Id.* In light of those facts, the *RPost Holdings, Inc.* court found that the plaintiff had "successfully and repeatedly reached both [the defendant] and [defendant's counsel] via email[,]" and the court had "no material doubt" that the plaintiff would be provided notice of the suit via email service. *Id.* at *2. Accordingly, that

court found that email service of process comported with constitutional notions of due process. *Id.*

In contrast, here, Plaintiff notes that it has "recently transacted business directly with" each of the "Defendant's merchant accounts to purchase infringing products . . . ." Docket No. 15 at 6 (citing Hart Decl. ¶¶ 11–12). However, unlike *RPost Holdings, Inc.*, Viahart has not demonstrated it has been able to communicate with each of the 73 Defendants via email. In fact, Plaintiff noted that "[o]btaining the marketplace specific email addresses for the Defendants requires expedited discovery from the marketplaces themselves," which has not yet been granted by this Court. Docket No. 15 at 6.

Plaintiff also argues the court in *Chanel, Inc. v. Partnerships & Unincorporated Association* "allowed service of process by email when the addresses of the foreign defendants were unknown." Docket No. 15 at 5 (citing *Chanel, Inc. v. Partnerships & Unincorporated Associations*, CV H-12-2085, 2012 WL 12894807, at *1 (S.D. Tex. Oct. 10, 2012). The court allowed electronic service finding email service was reasonably calculated to give notice to defendants. *Chanel, Inc.*, 2012 WL 12894807, at *2. The court allowed service by email, in part, because the plaintiff had "recently verified that all but four (4) of the defendants have at least one operational electronic mail . . . address . . . ." *Id.* at *1. There, Chanel, Inc.'s investigator verified the defendants email addresses by sending a pretextual email to discovered email addresses of the defendants and reporting whether it "bounced back to the issuer." *See* Docket No. 15-2 at 14–15.

Plaintiff contends that it has done "at least as much as the plaintiff" in *Chanel, Inc.* "to verify the email address of the defendants" because it "recently transacted business directly with each of these Defendant's merchant accounts to purchase infringing products[.]" Docket No. 15

at 6. The Court disagrees. Plaintiff concedes that it does not have specific email addresses for the 73 Defendants because obtaining those email addresses "requires expedited discovery from the marketplaces themselves . . . ." Docket No. 15 at 6. Therefore, Plaintiff could not have verified that each of the 73 Defendants have a valid email address to effectuate service.

Under these facts, service of process by email is not reasonably calculated to notify all 73 Defendants of this suit. *See Chanel, Inc. v. Huan Sheng Lin*, No. 08-23490-CIV, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009) (denying service of process through email because the court was "skeptical of authorizing service of process through an email address that Plaintiff has not demonstrated will reasonably notify the Defendant . . . ."); *see also Collins v. Doe*, No. CIV.A. H-10-2882, 2010 WL 4954727, at *1 (S.D. Tex. Nov. 30, 2010) (recognizing "courts have applied provisions of Rule 4 of the Federal Rules of Civil Procedure to authorize e-mail service when the record discloses diligent efforts by the plaintiff to obtain a physical address to effect traditional service, that the defendant does business on-line . . . , and that the defendant has recently communicated using the e-mail address the plaintiff proposes to use for service."); *Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-CV-02754-MSK-KMT, 2012 WL 122862, at *4 (D. Colo. Jan. 17, 2012) (recognizing "[m]any courts have also required that the plaintiff make some showing that it is reasonably likely that the defendant will actually receive email communications at the email address in question" and collecting cases). Allowing Plaintiff to effectuate service of process by email, to an address that Plaintiff has not demonstrated is reasonably likely to reach the Defendants, without any confirmation of receipt of the email or verification that the email is valid, is not reasonably calculated to notify each of the 73 Defendants of the pendency of this suit. *See Chanel, Inc. v. Huan Sheng Lin*, 2009 WL 1034627, at *2; *Liberty Media Holdings, LLC*, 2012 WL 122862.

## IV. Conclusion

Having made a *de novo* review of the written objections and the additional evidence filed by Plaintiff in response to the Report, the Court concludes that the findings and conclusions of the Magistrate Judge are correct and Plaintiff's objections are without merit. It is accordingly

**ORDERED** that Plaintiff's objections (Docket No. 15) are **OVERRULED** and that the Magistrate Judge's Report (Docket No. 11) is **ADOPTED** as the opinion of this Court. It is further

**ORDERED** that Plaintiff may immediately commence discovery by providing actual notice, pursuant to subpoena or otherwise, of this Order to any of the following parties: (1) any banks, savings and loan associations, payment processors or other financial institutions, including without limitation, Amazon, eBay, Wish, Ali Express, AliBaba, Joom, Vova, Global Solutions, DHGate, Tophatter, PayPal, Inc., Western Union, Payoneer, Worldfirst, etc. or other merchant account providers, payment provider, third party processors, credit card associations that receive payments or hold assets on Defendants' behalf; and (2) any third party service providers, including without limitation, ISPs, back-end service providers, web designers, sponsored search engine or ad-word providers, shippers, domain name registrars, domain name registries or online third-party sellers who have provided services for Defendants (collectively, "Third Party Providers") shall, within **five (5) days** after receipt of such notice, provide copies of all documents and records in such person or entity's possession or control relating to the identities and addresses of Defendants, their agents, servants, employees, confederates and any person acting in concert or participation with them and the locations and identities of Defendants' operations, including identifying information associated with Defendants' infringing webstores, websites and financial accounts.

**So ORDERED and SIGNED this 15th day of May, 2019.**

*Robert W. Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE