**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| VIAHART, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 6:18-CV-604-RWS-KNM |
| | § | |
| DOES 1–54, | § | |
| | § | |
| *Defendants*. | § | |

**REPORT & RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant's Opposed Motion to Vacate the Default Judgment and Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 68). This case was referred to the undersigned pursuant to 28 U.S.C. § 636. Doc. No. 5. After considering the motion, pleadings, and relevant law, the undersigned **RECOMMENDS DENYING** Defendant's motion.

**BACKGROUND**

A more thorough background of the case can be found in the Court's January 29, 2021 Report and Recommendation.[1] In short, Plaintiff Viahart LLC ("Viahart"), a toy manufacturer based in Texas, filed suit against multiple defendants on November 19, 2018, alleging trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[2] Viahart alleged that the defendants had offered counterfeit products for sale in the United States and Texas even though they did not have the right to use Viahart's BRAIN FLAKES (U.S.

---

[1] *Viahart, LLC v. Does 1-54*, No. 6:18-CV-604-RWS-KNM, 2021 WL 777083 (E.D. Tex. Jan. 29, 2021), *report and recommendation adopted*, No. 6:18-CV-604-RWS-KNM, 2021 WL 765216 (E.D. Tex. Feb. 26, 2021), *aff'd sub nom. Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161 (5th Cir. Feb. 14, 2022).
[2] Third Amend. Compl., Doc. No. 31.

1

Trademark Registration No. 5049910) or GOODMINTON (U.S. Trademark Registration No. 5370197) marks.[3] Viahart properly served the defendants and followed the procedure for entry of default for the defendants who had not appeared or answered,[4] and thereafter filed a motion for default judgment.[5] After holding a motion hearing and ordering supplemental briefing,[6] the undersigned issued an order recommending granting Viahart's motion,[7] which the Court adopted on February 26, 2021.[8] The Court entered a Final Judgment and Permanent Injunction on the same date, ordering that Viahart should recover statutory damages, attorneys' fees, and costs from the defaulting defendants.[9] The Court also permanently enjoined the defaulting defendants from further infringement or counterfeiting of Viahart's protected trademarks.[10]

Nearly a year after the Court entered its Final Judgment, Defendant DOE 10: Hu Qi Bo, DOE 10: Hu Qi Bo, (Amazon Merchant ID A35U19W8PIKVKO), 491749025@qq.com ("DOE 10") filed the instant motion pursuant to Federal Rule of Civil Procedure 60(b)(4).[11] Defendant asserts that the Final Judgment is void for lack of personal jurisdiction. In support of the motion, Defendant submitted the Declaration of Hu Qi Bo ("Hu").[12] Hu is the principal of YiWu Baodole Baby Products Co., Ltd. ("Yiwu Baodole"), a Chinese e-commerce company that is incorporated in China, with its principal place of business in Yiwu City, China. YiWu Baodole operates a storefront on Amazon.com named Bao Duole Toys, that sells children's educational toys including

---

[3] Third Amend. Compl., Doc. No. 31 at ¶ 1; Mot. Default J., Doc. No. 42 at 5.
[4] Pl.'s Mot. Clerk's Entry Default, Doc. No. 35; Ord., Doc. No. 37 (granting motion for entry of default); Clerk's Entry Default, Doc. No. 38.
[5] Pl.'s Mot. Default J. & Permanent Inj., Doc. No. 42.
[6] Min. Entry, Doc. No. 47 (recording substance of motion hearing); Ord. Suppl. Briefing, Doc. No. 49.
[7] Report and Recommendation, Doc. No. 51.
[8] Ord. Adopting R. & R., Doc. No. 57.
[9] Final J. & Permanent Inj., Doc. No. 58.
[10] Final J. & Permanent Inj., Doc. No. 58 (stating that defaulting defendants listed in Schedule A were subject to the final judgment).
[11] Def.'s Mot., Doc. No. 68.
[12] Decl. Hu Qi Bo, Doc. No. 68-2.

"Snowflakes" building blocks.[13] Defendant states that Bao Duole Toys or YiWu Baodole manufacture the Snowflakes product in China and that once a customer orders the Snowflakes product on Amazon.com, the products are shipped from China to the United States and payment is sent to Bao Duole Toys' Amazon account.[14] Defendant states that Bao Duole Toys and YiWu Baodole are not registered to do business in Texas, and asserts that neither company maintains any offices, employees, telephone listings, or manufacturing or distribution facilities in Texas. Defendant further asserts that neither company pays taxes or maintains any bank accounts in Texas, nor do they participate in any business meetings, seminars, trade shows, or other marketing related activities in Texas. Finally, Defendant states that neither company has any employees who visit Texas for business purposes, and asserts that neither company owns any real or personal property in Texas.[15] Defendant likewise asserts that Hu does not conduct any business or have any personal connections with the state of Texas.[16] According to Hu, he learned about this case after receiving e-mails from Plaintiff's counsel and was not otherwise served with process.[17] Defendant states that after the Court entered the Final Judgment in this case, Plaintiff's counsel froze and obtained approximately $84,794 in funds from two other Amazon stores—Bodolo Toys and UMTOYS.[18] Defendant states that Bodolo Toys and UMTOYS are operated by two separate Chinese Companies—Guangshan Quwan Trading Co., Ltd. and Yunhe County Mengjiao Trading Co., Ltd.[19] Defendant asserts that Hu is not the owner or shareholder of these two companies, but states that Hu is the operation manager for the Bodolo Toys and UMTOYS Amazon.com

---

[13] Def.'s Mot., Doc. No. 68 at 2.
[14] Def.'s Mot., Doc. No. 68 at 2.
[15] Def.'s Mot., Doc. No. 68 at 2.
[16] Decl. Hu Qi Bo, Doc. No. 68-2 ¶ 19.
[17] Decl. Hu Qi Bo, Doc. No. 68-2 ¶ 29.
[18] Def.'s Mot., Doc. No. 68 at 4.
[19] Def.'s Mot., Doc. No. 68 at 2.

storefronts.[20] Defendant asserts that neither of those stores sold any of the allegedly infringing products and that they have no connection with this case.

In its motion, Defendant argues that the Court lacks personal jurisdiction over Hu. Defendant states that Hu did not have minimum contacts with Texas, and argues that because Plaintiff failed to name any of the corporations associated with Hu, the Court cannot consider any acts of purposeful availment allegedly committed by these third parties.[21] Defendant states that Bao Duole Toys has sold some of the Infringing Products at issue to residents located in Texas through Amazon's Fulfillment by Amazon program.[22] However, Defendant asserts that Hu did not personally sell the products or participate in their distribution. Defendant further argues that even if the Court finds Hu's use of Amazon's fulfillment program as an act of purposeful availment, that the Fiduciary Shield Doctrine prevents the Court from considering such actions in regard to Hu in his personal capacity. Defendant also asserts that personal jurisdiction over Hu is not proper under the *Zippo* Sliding Scale Test. Defendant next argues that dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(7) because Plaintiff failed to add an indispensable party. Defendant asserts that Bao Duole Toys/Yiwu Baodole manufacture the products in question and that disposing of the matter in their absence, impedes their ability to protect their interest(s). Defendant further asserts that this failure subjects Hu, as the principal of both, to a substantial risk of incurring multiple obligations. Finally, Defendant argues that service of process is insufficient under Rule 12(b)(5) because the Hague Convention does not permit e-mail service on a Chinese

---

[20] Decl. Hu Qi Bo, Ex. C, Doc. No. 68-5.

[21] Def.'s Mot., Doc. No. 68 at 9 (Yiwu Baodole, Bao Duole Toys, Bodolo Toys, or UMTOYS).

[22] Def.'s Mot., Doc. No. 68 at 8; Decl. Hu Qi Bo, Doc. No. 68-2 at ¶ 7 (Amazon operates a website that offers an online marketplace for customers. It also offers third-party sellers a service called "Fulfillment by Amazon," which allows third-party sellers to take advantage of Amazon's logistical network. When using this service, a third-party seller sends its product to an Amazon fulfillment center, where Amazon stores the product. If a customer buys the product from the third-party seller, Amazon pulls the product off the shelf, packages it, and ships it to the customer on behalf of the seller. A third-party seller even can use this service when selling products outside of Amazon's online marketplace; for example, a third-party seller can use the service when selling the product on another website, such as eBay).

Defendant. Accordingly, Defendant requests that the Court vacate the default judgment against Hu and dismiss the case in its entirety.

In its Response, Plaintiff argues that the Court should deny Defendant's motion to vacate for several reasons.[23] Plaintiff first asserts that Defendant's motion is untimely because it was not brought within a "reasonable time." Plaintiff next argues that good cause does not exist to set the judgment aside because Defendant's default was willful.[24] Plaintiff asserts that the Court has personal jurisdiction over Defendant and that Hu's actions qualify as minimum contacts. Specifically, Plaintiff contends that the Fiduciary Shield Doctrine does not apply because Defendant "had a role in selling counterfeit products from China to Texas via an interactive e-commerce webstore." Plaintiff also argues that it properly served Defendant pursuant to both the Federal and Texas Rules of Civil Procedure. Finally, Plaintiff asserts that Defendant is a proper party to this lawsuit and that no further joinder was required. According to Plaintiff, Defendant does not argue that Plaintiff sued the wrong party, but rather that Plaintiff did not name two manufacturers of the infringing goods—which Hu claims he owns—as a joint tortfeasor. Plaintiff states that any true and valid ancillary parties could have intervened in this action, and asserts that is immaterial what Defendant is calling itself because this lawsuit was brought and decided against Defendant "DOE 10" with Amazon Merchant ID A35U19W8PIKVKO.[25] Plaintiff further asserts that it is entitled to recover attorney's fees pursuant to 15 U.S.C § 1117(a). In support of its arguments, Plaintiff attached the following: (1) The Declaration of Plaintiff's CEO and Founder, Molson Hart; (2) Screenshots of "take down complaints" against Viahart's Amazon listings,

---

[23] Pl.'s Resp., Doc. No. 71.

[24] Plaintiff asserts, and the evidence demonstrates, that Defendant was well aware of the proceedings and the Final Judgment in this case. For example, during the early stages of this litigation, Defendant responded to Plaintiff's counsel's email inquiries, engaged in settlement discussions, was properly served, and received notice of the pleadings and the Court's Final Judgment. Pl.'s Resp., Doc. No. 71, Exhibits 9–12, 13.

[25] Pl.'s Resp., Doc. No. 71 at 14.

allegedly due to a report by "Hu qi bo, 491749025@qq.com," "bodolo," and/or "Mr. Hu" as the filer;[26] (3) copies of email communications between 491749025@qq.com and Plaintiff's counsel regarding settlement;[27] (4) Viahart's email service of the Summons and Complaint to 491749025@qq.com, and Hu Qi Bo's response thereto; (5) emails from Viahart's counsel to 491749025@qq.com, regarding further developments of the lawsuit; and (6) The Declaration of Plaintiff's Counsel, Charles A. Wallace.

In his Reply, Defendant argues that the motion is timely because a request for relief pursuant to Rule 60(b)(4) for lack of personal jurisdiction may be raised at any time.[28] Defendant also reasserts his argument that pursuant to the Fiduciary Shield Doctrine, the Court cannot exercise personal jurisdiction over Hu. Defendant further argues that Plaintiff's failure to name Bao Duole Toys/Yiwu Baodole warrants dismissal. Finally, Defendant reasserts that he was not properly served because service of process pursuant to Rule 4(f)(3) is against the Hague Convention. Accordingly, Defendant asserts the default judgment should be vacated pursuant to Rule 60(b)(4) and Plaintiff's Third Amended Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and (12)(b)(7).

## LEGAL STANDARD

### A. Relief from Final Judgment Pursuant to Rule 60(b)(4)

Under Federal Rule of Civil Procedure 60(b)(4), a court may relieve a party from final judgment when "the judgment is void." FED. R. CIV. P. 60(b)(4). However, "[a] judgment is not void merely because it is erroneous." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996). "A judgment is void if the court that rendered it lacked jurisdiction of the subject matter, or of the

---

[26] *See* Pl.'s Resp., Doc. No. 71, Exhibits 3–8.
[27] Pl.'s Resp., Doc. No. 71 at 8 n.5 (Exhibits 9–12 are supported by Exhibit 13, the Declaration of Charles A. Wallace, counsel for Viahart).
[28] Def.'s Reply, Doc. No. 71.

parties, or if it acted in a manner inconsistent with due process of law." *Williams v. New Orleans Pub. Serv., Inc.,* 728 F.2d 730, 735 (5th Cir. 1984) (quotation marks omitted); *see generally United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270–71 (2010) (collecting authorities). Ordinarily, granting a Rule 60 motion is left within the district court's discretion; however, when "the motion is based on a void judgment under Rule 60(b)(4), the district court has no discretion– the judgment is either void or it is not." *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.,* 804 F.2d 311, 314 (5th Cir**.** 1986)**.** For this reason, "there is no time limit on Rule 60(b)(4) motions." *Jackson v. FIE Corp.,* 302 F.3d 515, 523 (5th Cir. 2002). "If the judgment is void, the district court *must* set it aside." *Id.* at 524. Rule 60(b)(4) "embodies the principle that in federal court, a 'defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.'" *Id.* at 522 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

**B.  Personal Jurisdiction Under the 14th Amendment**

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). However, "[b]ecause the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). To satisfy due process, the plaintiff must demonstrate "(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not 'offend

traditional notions of fair play and substantial justice.'" *Id.* "There are two types of 'minimum contacts:' those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

Here, it is undisputed that Defendant is not subject to the general jurisdiction of any state.[29] Thus, the relevant inquiry is whether the Court can exercise specific jurisdiction over Defendant. A court's exercise of specific personal jurisdiction is proper where a defendant "purposely directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" the defendant's purposeful activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Courts in the Fifth Circuit evaluate whether the exercise of specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *Id.* at 759.

A party need only engage in a "single substantial act" to justify "the exercise of specific jurisdiction in an action arising from or related to such acts." *Coach, Inc. v. Pro Nail & Beauty Supply*, No. 5:16-CV-327-DAE, 2016 WL 9450446, at *3 (W.D. Tex. Dec. 27, 2016) (quoting

---

[29] *See* Def.'s Mot., Doc. No. 68 at 13; Pl.'s Resp., Doc. No. 71 at 20.

*Ham v. La Cienega Music Co*., 4 F.3d 413, 415 (5th Cir. 1993)). However, this act must be "[p]urposeful forum-directed activity." *Id.*

When the district court rules on a motion to dismiss for lack of jurisdiction without conducting an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case of jurisdiction. *Wilson v. Belin*, 20 F.3d 648 (5th Cir. 1994). Therefore, proof by a preponderance of the evidence is not required *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Uncontroverted allegations in the plaintiff s complaint will be taken as true, and conflicts between the facts contained in the parties' affidavits will be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *Wilson*, 20 F.3d at 648.

## C. Personal Jurisdiction in Internet Cases

The Fifth Circuit standard for assessing personal jurisdiction in internet cases is laid out in *Mink v. AAAA Development LLC*, 190 F.3d 333,336 (5th Cir. 1999) (adopting the "sliding scale" test set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Texas district courts have interpreted *Mink's* adoption of *Zippo* to apply to both general jurisdiction and specific jurisdiction. *See e.g., Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.,* 106 F.Supp.2d 895, 900-01 & 900 n.10 (N.D. Tex. May 16, 2000) (Fitzwater, J.) (citing *Mink,* 190 F.3d at 336).

> The *Zippo* scale spans three levels of interactivity of a defendant's website: where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and where a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website."

*Sindhi v. Raina*, No. 3:15-CV-3229-D, 2017 WL 4167511, at *4 (N.D. Tex. Sept. 20, 2017), *aff'd*, 905 F.3d 327 (5th Cir. 2018). "In determining whether personal jurisdiction is proper

on the basis of an interactive website, courts in the Fifth Circuit have found that it is not enough for a 'Defendant ... to have the potential to interact with, sell products to, and contract with Texas residents;' instead, the evidence in the record must 'support a finding that this level of activity has taken place.'" *Naughtys LLC v. Does 1-580*, No. 4:21-CV-492-O, 2022 WL 818993 (N.D. Tex. Mar. 3, 2022), *report and recommendation adopted*, No. 4:21-CV-00492-O, 2022 WL 816480 (N.D. Tex. Mar. 17, 2022).

## ANALYSIS

Defendant requests relief pursuant to Rule 60(b)(4), claiming the Court's Final Judgment is void for lack of personal jurisdiction and improper service of process.[30] Plaintiff asserts that the Court has specific personal jurisdiction over Defendant under the traditional minimum contacts analysis or alternatively, under Federal Rule of Civil Procedure 4(k)(2). Here, the personal jurisdiction question under the traditional minimum contacts analysis is a close one, and the Fifth Circuit has not resolved the question of which party bears the burden of proof on a Rule 60(b)(4) motion. *See Jackson v. FIE Corp.*, 302 F.3d 515, 521 n.6 (5th Cir. 2002) (declining to "choose a side in the split of authority on this question"). However, regardless of who has the burden of proof, Defendant cannot succeed on its Rule 60(b)(4) motion to vacate the default judgment because service was proper, and Plaintiff has made a *prima facie* case supporting the Court's exercise of specific personal jurisdiction.[31]

---

[30] The parties do not dispute that the Court has subject-matter jurisdiction over Plaintiff's claims. *See* Compl., Doc. No. 31 at 10–11; Mot. Default J., Doc. No. 42 at 8–11.

[31] Defendant also argues that dismissal is proper pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. However, because the Final Judgment is not void pursuant to Rule 60(b)(4), the Court need not address Defendant's argument for dismissal pursuant to Rule (12)(b)(7).

## A.  The Court has Specific Personal Jurisdiction over Defendant

As set forth above, for the Court to properly exercise specific personal jurisdiction over Defendant, Plaintiff must state a *prima facie* case by showing: (1) Defendant has minimum contacts with Texas; and (2) Plaintiff's cause of action arises out of or results from Defendant's forum-related contacts. Preliminarily, the Defendant in this case is "DOE 10," who is identified by the Amazon Merchant ID A35U19W8PIKVKO and associated email address, 491749025@qq.com. Hu, the principal of the webstore associated with the aforementioned identifiers, was not named as a Defendant in this matter— either in his individual or corporate capacity. Yet, Hu attempts to muddy the waters by asserting that he is not subject to the Court's exercise of personal jurisdiction, and therefore, the Court's Final Judgment is void. This argument lacks merit. First, because Defendant's actions in this case satisfy the requirement for minimum contacts, and further, considering Hu's admitted conduct, the Court's exercise of specific personal jurisdiction over Hu would likewise be proper.

### 1.  Defendant's Actions Satisfy the Minimum Contacts Test

Regarding internet-based contacts, the Court considers the *Zippo* factors in conjunction with the traditional minimum contacts analysis. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 (5th Cir. 2012). Thus, the central jurisdictional issue is whether Defendant's placement of the Infringing Products on its Amazon webstore, and the subsequent sales of the Infringing Products to Texas residents, satisfies the requirement that Defendant purposefully directed its activities toward Texas and that Plaintiff's claims arise out of or are related to Defendant's contacts with Texas. [32]

---

[32] It is undisputed that Defendant's Amazon webstore constitutes an "interactive" website pursuant to the *Zippo* sliding scale test.

Plaintiff argues that Defendant has sufficient minimum contacts with Texas because Defendant actually approved the sale and shipment of Infringing Products to Texas and because of Defendant's own admission that the Infringing Products were sold "to residents located in Texas."[33] Plaintiff further asserts that the minimum contacts element of due process is satisfied because Defendant promoted, advertised, marketed, and offered the Infringing Products for sale on the Infringing webstore and pursued sales from Texas residents by offering and authorizing shipping to Texas.[34] Thus, Plaintiff contends that Defendant's actions satisfy the requirements for specific personal jurisdiction because the sale of those products are the basis of Plaintiff's alleged damages. Defendant argues that the Court cannot consider any acts of purposeful availment allegedly committed by third parties for purposes of determining whether it can exercise personal jurisdiction over Defendant. Specifically, Defendant argues that Bao Duole Toys sold the Infringing Products, and that Amazon's act of shipping those products to the forum state of Texas is not an act of purposeful availment by Defendant. Defendant further argues that the Fiduciary Shield Doctrine prevents the Court from considering Defendant's use of Amazon's Fulfillment by Amazon program as an act of purposeful availment by Hu.

At the outset, Defendant's assertion that the Fiduciary Shield Doctrine precludes the Court from exercising specific personal jurisdiction over Hu, lacks merit. Under the Fiduciary Shield Doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has *in personam* jurisdiction over the corporation[.]" *Glob. 360, Inc. v. Spittin' Image Software, Inc.*, 2005 WL 625493, at *7 (N.D. Tex. Mar. 17, 2005) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)).

---

[33] Def.'s Mot., Doc. No. 68 at 9; Dec. Hu Qi Bo, Doc. No. 68-2 at ¶ 25 ("Bao Duole Toys/Yiwu Baodole have sold some Snowflakes products to residents located in Texas through Amazon's FBA program").
[34] Pl.'s Resp., Doc. No. 71 at 10–11.

This rule does not apply, however, to "corporate officers who, in their role as corporate agents, injure persons by virtue of their 'tortious activity even if such acts were performed within the scope of their employment as corporate officers.'" *Id.* (refusing to apply the Fiduciary Shield Doctrine and holding that allegations of a principal's intentional infringement of copyrights and trademarks "are sufficient to establish a prima facie case of personal jurisdiction") (collecting cases).

Here, Hu seems to simultaneously assert that the Court lacks personal jurisdiction over his "corporation"[35] and argue the applicability of the Fiduciary Shield Doctrine. As previously discussed, Hu is not the Defendant in this case; however, even if Hu were a named Defendant in this matter, his tortious activity both renders the Fiduciary Shield Doctrine inapplicable, and would be sufficient to establish a *prima facie* case for specific personal jurisdiction over him. Defendant, perhaps inadvertently, summarizes the acts of purposeful availment best: "Simply put, Hu, through his company Bao Duole Toys, shipped products from China . . . to residents located in Texas."[36]

As to whether Defendant's actions satisfy the minimum contacts test, after viewing Plaintiff's assertions in the light most favorable to Plaintiff, Defendant's contacts with Texas appear sufficient to give the Court specific personal jurisdiction over Defendant.[37] Nevertheless, the Court is mindful of the due process implications at issue considering the lack of Fifth Circuit precedent regarding the exercise of specific personal jurisdiction over a non-resident defendant whose only contact(s) with a forum state are via a generally accessible e-commerce platform—specifically, in light of the unsettled question as to which party bears the burden to plead personal jurisdiction on a motion for relief pursuant to Rule 60(b)(4). [38]

---

[35] Amazon Merchant ID A35U19W8PIKVKO and associated email address, 491749025@qq.com.

[36] Def.'s Mot., Doc. No. 68 at 3, 14.

[37] *See Naughtys LLC v. Does 1-580*, No. 4:21-CV-492-O, 2022 WL 818993 (N.D. Tex. Mar. 3, 2022).

[38] *Personal Jurisdiction Based on Internet Activity*, 36 No. 8 Fed. Litigator NL 3 (2021) ("The Supreme Court has yet to enter a case squarely addressing how the minimum contacts analysis applies to online transactions and most circuit courts have declined to announce a specific analysis for internet cases, instead just applying their traditional

Defendant cites to *Viahart, LLC v. Arkview LLC*, No. 6:19-cv-00406, 2020 WL 4905542 (E.D. Tex. Aug. 20, 2020) ("*Arkview*"), where the court determined it lacked specific personal jurisdiction over two non-resident defendants that likewise sold allegedly infringing products by utilizing Amazon's fulfillment services. *Id.* at *4. However, the instant case is distinguishable both in terms of its procedural posture and on the underlying facts. In *Arkview*, the court determined that it lacked personal jurisdiction at the motion to dismiss stage of the litigation, where the plaintiff clearly had the burden to establish it, and noted that the "[p]laintiff cite[d] almost no authority to support its own arguments, and [that] its arguments were unclear and unhelpful in relation to the legal framework at play and in relation to [the defendants'] arguments and authorities." *Id.* at *4. As a result, the court was not persuaded that the defendants' use of Amazon's fulfillment services was a sufficiently "intentional contact with Texas" or that the sale of product to Texas residents was anything more than the "fortuitous result of that platform's global presence." *Id.* at *6. Here, Defendant's motion for relief was filed pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, and as discussed above, the Fifth Circuit has yet to determine which party bears the burden to establish personal jurisdiction at this stage. *See Jackson v. FIE Corp.*, 302 F.3d 515, 521 n.6 (5th Cir. 2002). Further, the relevant defendants in *Arkview* were corporate entities, organized in New York and Delaware, and were therefore, subject to general jurisdiction in those states. *Id.* at *1; *see Viahart, LLC v. Creative Kids Online, LLC*, No. 1:20-CV-09943-GHW, 2022 WL 836431, at *3 (S.D.N.Y. Mar. 18, 2022).

The facts of this case align more closely with those in *Naughtys LLC v. Does 1-580*, where the plaintiff asserted claims for copyright infringement, alleging that "Defendant Does 1–580, who are individuals and businesses residing in foreign jurisdictions, placed counterfeit [products] for

---

minimum contacts precedent. The district courts, however, are being confronted with jurisdictional challenges to claims based on internet commerce on a regular basis").

sale on online webstores, which were hosted by third-party e-commerce platforms, such as Amazon . . . and such [products] where sold and shipped to buyers in the United States, including Texas." No. 4:21-CV-492-O, 2022 WL 818993, at *1 (N.D. Tex. Mar. 3, 2022). In *Naughtys* LLC, the U.S. District Court for the Northern District of Texas addressed whether the exercise of personal jurisdiction was proper over "Defendant Doe 242, identified as a store named Kuerqi, located in China and owned by Wu Lian Yun" that had "promoted, advertised, marketed, and offered for sale allegedly Infringing Products on Amazon.com." *Id.* at *7. Doe 242 did have one direct sale of an Infringing Product to Texas. *Id.* However, that sale was made to the plaintiff, who had authorized the purchase through itself. *Id.* Ultimately, the court determined that it lacked personal jurisdiction over Doe 242 reasoning that "[c]ourts have repeatedly rejected attempts by Plaintiffs . . . to manufacture contacts with the forum state by having an agent or investigator pose as a buyer and purchase the alleged infringing products." *Id.* n.16 (collecting cases). However, the court also noted that the defendant "stands in stark contrast to a seller that is located in a foreign country and actually sold and shipped one or more allegedly Infringing Products on any of the Marketplaces to one or more buyers in Texas that were not Plaintiff or Plaintiff's investigator." *Id.* at *8 n.17 (collecting cases).

Here, Plaintiff asserts that Defendant did exactly that.[39] Accordingly, the Court views the instant matter as distinguishable from *Arkview*, and the court's reasoning in *Naughtys LLC* as more persuasive in the instant matter.[40] Consequently, Plaintiff has shown the first element to establish a *prima facie* case for the Court to exercise specific personal jurisdiction over Defendant.

---

[39] Compl., Doc. No. 31 at 4 ("Each Defendant targets consumers in the United States, including the State of Texas, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Texas and Eastern District of Texas.").

[40] *See also Viahart LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 19-CV-8181, 2021 WL 5113935 (N.D. Ill. Nov. 3, 2021) (granting defendant's motion to set aside the default judgment for lack of

### 2. *Plaintiff's Claims arise out of Defendant's Contacts with Texas*

The Court's exercise of specific personal jurisdiction also requires that the suit arise out of or relate to Defendant's contacts with Texas. *Lewis*, 252 F.3d at 358, *cert. denied*, 513 U.S. 930 (1994). Plaintiff's claims in this suit are based upon the sale of counterfeit products that infringe its intellectual property rights. "[A] single sale of a trademarked product in violation of the Lanham Act in the forum is sufficient to establish personal jurisdiction." *Loloi, Inc. v. Lolo Imports*, LLC, No. 18-CV-2315-L-BK, 2019 WL 5887351, at *3 (N.D. Tex. Aug. 2, 2019), *report and recommendation adopted*, No. 3:18-CV-2315-L, 2019 WL 5887218 (N.D. Tex. Aug. 27, 2019). Defendant has admitted that it sold infringing products to Texas residents.[41] Thus, each allegedly infringing product that Defendant sold to Texas residents constitutes a *prima facie* showing of minimum contacts because Defendant's contacts with Texas are directly related to this cause of action. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–76 (1985) (holding minimum contacts test is satisfied, even if the contact is a single act, so long as the contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff or a third person); *see also Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (holding that the plaintiff's claims arose out of the defendant's contacts with the forum state because its infringement claims involved "the same [product]" that had traveled through the stream-of-commerce into the forum state).

Accepting the complaint's well-pleaded allegations, Plaintiff has carried the burden of showing that Defendant had the minimum contacts with Texas necessary to create specific personal jurisdiction over it.

---

personal jurisdiction where defendant had made only one sale of the allegedly infringing products— in another forum––and discussing that the exercise of specific personal jurisdiction would be proper there).

[41] Def.'s Mot., Doc. No. 68 at 3, 14; Decl. Hu Qi Bo, Doc. No. 68-2 at ¶25.

### 3. *The Court's exercise of personal jurisdiction over Defendant is fair and reasonable.*

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Sangha v. Navig8 ShipManagement Priv. Ltd*., 882 F.3d 96, 102 (5th Cir. 2018) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). Because Plaintiff has met this burden, Defendant must present a "compelling case." *Id.* To evaluate and weigh this element of due process, courts examine: (1) the burden on the nonresident defendant to defend itself in the forum; (2) the forum state's interests; (3) the plaintiff's interest in securing convenient and effective relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* Rarely is an assertion of jurisdiction "unfair or unreasonable" after a plaintiff demonstrates minimum contacts. *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *3 (E.D. Tex. July 6, 2021).

Here, Defendant failed to submit any argument or analysis as to why the Court's exercise of personal jurisdiction over him would be unreasonable or offend traditional notions of fair play and substantial justice. Therefore, Defendant has failed to meet his burden to present a compelling case. Nevertheless, considering the relevant factors, the Court's exercise of personal jurisdiction over Defendant comports with due process. First, Defendant's burden of defending this lawsuit in the United States and in Texas—a state to which it authorized the sale of Infringing Products, is not distinguishable from the burdens imposed on any other out-of-state defendant. Further, "once minimum contacts are established, the interests of the forum, and the plaintiff justify even large burdens on the defendant." *Wien Air Alaska*, 195 F.3d at 215. Furthermore, the harm suffered by Plaintiff in Texas gives rise to the interest of Texas in protecting its residents and providing them a forum. Specifically, because the Infringing Products were imported into the forum state of Texas

and sold to consumers within the state. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993) ("Texas, as forum state, also has an interest in adjudicating a dispute that involves a sale of goods to a Texas consumer"). In addition, Plaintiff has a compelling interest in obtaining relief in the forum where its "goodwill and reputation have been damaged as a result of Defendant's sale of substandard counterfeit goods."[42] Finally, there is public interest in preserving the rights provided by the Lanham Act, and allowing Defendant to escape liability undermines the state and judicial system's shared interest in resolving controversies, furthering social policies, and enforcing the laws.[43]

Accordingly, the Court has specific personal jurisdiction over Defendant DOE 10 with Amazon Merchant ID A35U19W8PIKVKO, because Defendant's actions are sufficient to constitute purposeful availment, Plaintiff's claims arise from Defendant's forum-related contacts––the sale and shipment of the Infringing Products to residents in Texas, and the Court's exercise of personal jurisdiction does not offend due process.

Alternatively, even if Defendant's actions are insufficient under the traditional minimum contacts analysis, the Court has specific personal jurisdiction over Defendant pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.

### 4.  *Personal Jurisdiction over Defendant Pursuant to Rule 4(k)(2)*

Plaintiff also asserts that the Court may properly exercise personal jurisdiction over Defendant pursuant to Rule 4(k)(2).[44] "Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify

---

[42] Pl.'s Resp., Doc. No. 71 at 22.
[43] The purpose of the Lanham Act is to protect the public from deception or confusion, and to preserve the integrity of government-granted property rights such as trademarks; Pl.'s Resp., Doc. No. 71 at 22.
[44] Pl.'s Resp., Doc. No. 71 at 20.

the application of federal law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293-94 (Fed. Cir. 2012) (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1295-96 (Fed Cir. 2009)). Rule 4(k)(2) "approximates a federal long-arm statute, allowing district courts to exercise personal jurisdiction even if the defendant's contacts with the forum state would not support jurisdiction under that state's long-arm statute...." *Id*. at 1294. Rule 4(k)(2) states: "For a claim that arises under federal law, serving a summons ... establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2).

In other words, "[f]or a court to exercise personal jurisdiction over a defendant under Rule 4(k)(2): (1) the plaintiff's claim must arise under federal law; (2) the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercise of jurisdiction must comport with due process." *Bluestone Innovations Tex., L.L.C. v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 664 (E.D. Tex. Sept. 30, 2011) (citing *Touchcom, Inc.*, 574 F.3d at 1414). "When the court's authority arises directly from federal law, the court considers a party's contacts with the United States as a whole, rather than just with the State of Texas, because due process is governed by the Fifth Amendment instead of the Fourteenth Amendment." *United States ex rel. Reddell v. DynCorp Int'l, LLC*, No. 1:14-CV-86, 2019 WL 12875442, at *4 (E.D. Tex. Mar. 1, 2019) (citing *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016)). Plaintiffs have the initial burden to plead and prove contacts with the United States and Rule 4(k)(2)'s applicability but are not required to negate jurisdiction in every state. *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2014). The Fifth Circuit has held that "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2)." *Id.*

Here, Plaintiff's claims arise under the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*. Furthermore, the parties do not dispute that Defendant is not subject to the general jurisdiction of any state, and Defendant does not concede to jurisdiction elsewhere. *See Adams*, 364 F.3d at 651. Finally, regarding the third element, the only remining inquiry under Rule 4(k)(2) is whether the exercise of personal jurisdiction comports with the Fifth Amendment's guarantee of due process. *United States ex rel. Reddell*, 2019 WL 12875442, at *6 (E.D. Tex. Mar. 1, 2019) ("A nonresident defendant purposefully avails itself of the benefits and protections of a forum by taking 'purposeful and affirmative action' inside or outside of the forum that has reasonably foreseeable consequences within the forum"). Thus, Plaintiff must allege sufficient facts from which it could be inferred that Defendant's contacts with the United States as a whole are adequate to subject it to specific jurisdiction in the United States. *See Patterson*, 826 F.3d at 234.

As discussed above, Plaintiff asserts that Defendant set up an Infringing Webstore with Amazon, an online marketplace that specifically offers entry into the United States e-commerce market, to sell and ship the Infringing Products to the United States.[45] Plaintiff also asserts that Defendant targeted consumers in the United States when it advertised the Infringing Products for sale through that webstore while offering shipping to the United States and Texas. Finally, Plaintiff asserts that Defendant actually sold the Infringing Products to consumers within the United States. Defendant does not dispute these allegations, and further confirms that the allegedly Infringing Products were manufactured in China and then shipped to an Amazon Fulfillment Center in the United States.[46]

---

[45] Compl., Doc. No. 31 at 4.
[46] Decl. Hu Qi Bo, Doc No. 68-2 at ⁋ 10 ("once a customer orders the [Infringing Product] on [] Amazon.com, the products will be shipped from China to the United States []").

Thus, Plaintiff has made a *prima facie* showing that Defendant delivered its allegedly infringing products to Amazon with the expectation that they would be purchased in the United States, and those specifically alleged activities are directly related to the purportedly wrongful conduct that is the basis for this lawsuit. *RE/MAX, LLC v. Shenzhen Remax Co., Ltd*, No. 115CV02496REBSKC, 2019 WL 1081039 (D. Colo. Jan. 18, 2019) (holding that the non-resident had purposefully directed its activities toward residents of the United States by operating a storefront offering Infringing Products on Amazon.com), *report and recommendation adopted,* No. 15-CV-02496-REB-SKC, 2019 WL 1437620, at *5 (D. Colo. Feb. 27, 2019). Finally, as previously discussed, the Court's exercise of personal jurisdiction comports with due process. The Court's analysis of the relevant due process factors under the traditional minimum contacts test for Texas, likewise, applies here to the United States.

Accordingly, the Court may properly exercise personal jurisdiction over Defendant pursuant to Rule 4(k)(2).

## B.  Service of Process was Proper

Before the Court "may exercise personal jurisdiction over [a] defendant, the procedural requirement of service of summons must be satisfied." *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (emphasis added). Defendant asserts that dismissal is warranted due to insufficient service of process.[47] Defendant contends that the Hauge Conventions applies to this case and that it does not permit email service on a Chinese Defendant. Federal Rule of Civil Procedure 4(f) "permits service on foreign defendants 'by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents' *and* 'by other means

---

[47] Def.'s Mot., Doc. No. 68 at 22.

not prohibited by international agreement, as the court orders.'" *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (quoting FED. R. CIV. P. 4(f)(1), (3)).

However, as affirmed in *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022), service was proper. In *Viahart*, three defaulting defendants appealed the very Final Judgment from which Defendant currently seeks relief, challenging, as relevant here, the service by email. *Id.* Under essentially identical circumstances, the Fifth Circuit held that service "by email was appropriate because it was court ordered, reasonably calculated to notify [defendants], and was not prohibited by an international agreement." *Id.* Likewise here, Defendant's assertion that service did not comply with the Hague Convention misses the mark because service was made pursuant to Federal Rule of Civil Procedure 4 subsection (f)(3), not subsection (f)(1) or the Hague Convention.

In response to Plaintiff's subpoena, Amazon investigated the infringing webstore and found that it was tied to Amazon Merchant ID A35U19W8PIKVKO, with associated name "Hu Qi Bo," email address 491749025@qq.com, and physical address in Germantown, Tennessee.[48] Plaintiff confirmed that this email address was accurate, was tied to both Amazon Merchant ID A35U19W8PIKVKO and Hu Qi Bo, and Plaintiff attempted to personally serve process before serving Defendant via email pursuant to the Court's instructions.[49] Furthermore, service via email was fundamentally fair because it provided actual notice. Not only did Plaintiff's test email not bounce back but Defendant responded and engaged in ongoing communication with Plaintiff throughout the duration of this lawsuit.[50] Accordingly, service via email was proper and Defendant's argument for dismissal pursuant to Rule 12(b)(5) lacks merit.

---

[48] Pl.'s Resp., Doc. No. 71 at 13 (citing Ex. B, Doc. No. 27-3).
[49] Pl.'s Resp., Doc. No. 71 at 13 (citing Ex. D, Doc. No. 27-5).
[50] Pl.'s Resp., Doc. No. 71 at 24 (citing Ex. F, Doc. No. 27-7).

### C. Viahart's Request for Attorney's Fees

Plaintiff asserts it is entitled to recover its attorneys' fees and costs it necessarily incurred in retaining counsel and responding to Defendant's motions.[51] In its Reply, Defendant did not submit any argument or otherwise respond to Viahart's assertion.

In Lanham Act cases, the prevailing party may receive its attorney's fees in "exceptional' cases[,]"[52] which are defined as where "the substantive strength of a party's litigating position" is notable or a party unreasonably litigates the case. *Munn*, 2019 WL 7500499, at *6 (quoting *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016)). A case is also exceptional when "the defendant's trademark infringement 'can be characterized as malicious, fraudulent, deliberate, or willful.'" *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992) (quoting S. Rep. No. 93-1400, at 7136 (1974)); *see also Better Keiki, LLC v. MairicoDirect*, No. 4:17-CV-00850, 2018 WL 5305571, at *7 (E.D. Tex. Aug. 29, 2018), *report and recommendation adopted sub nom. Better Keiki, LLC v. MairicoDirect, KamiroUS, DragonB Store*, No. 4:17-CV-850, 2018 WL 4520192 (E.D. Tex. Sept. 21, 2018) (collecting cases holding that a defendant's willful trademark infringement constitutes an exceptional case). Further, a party's default can be enough to demonstrate a case is exceptional. *Real Estate Edge, LLC v. Campbell*, No. 1:17-CV-1093-RP, 2019 WL 830966, at *6 (W.D. Tex. Feb. 21, 2019). Here, Defendant engaged in willful conduct and failed to appear.[53] Therefore, this is an "exceptional case" for the purpose of attorney's fees, and award of such fees is warranted.

---

[51] Pl.'s Resp., Doc. No. 71 at 30.
[52] 15 U.S.C. § 1117(a); *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 696 (5th Cir. 1992).
[53] Pl.'s Resp., Doc. No. 71 at 24 (citing Doc. No. 27-3).

To determine attorney's fees, courts in the Fifth Circuit use the two-step lodestar method. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). First, the court calculates the lodestar "by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate," which is determined by "the market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citation omitted). Second, although the lodestar amount is afforded "a strong presumption of . . . reasonableness[,]" a court may "enhance or decrease the amount of attorney's fees based on" the twelve factors espoused in *Johnson v. Georgia Highway Express, Inc.*[54] *Black*, 732 F.3d at 502 (citations omitted). The party seeking award of attorneys' fees carries the burden of demonstrating the reasonableness of the requested fee award. *Id.*; *Dickey's*, 2016 WL 3653517, at *1 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Plaintiff has submitted records of its litigation expenses, totaling $11,577.50, for this case.[55] It asserts that these fees were reasonable and necessary.[56] In its Response, Plaintiff includes a declaration of its counsel, James A. Creedon, attesting to the services his firm Creedon PLLC rendered Viahart for this case.[57] Also included with the Response are billing records with information about the tasks performed, the hours billed, and billing rates.[58]

---

[54] 488 F.2d 714, 717–19 (5th Cir. 1974). The *Johnson* factors include: "(1) the time and labor required for litigation; (2) the novelty and complexity of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorneys had to refuse other work to litigate the case; (5) the attorneys' customary fee; (6) whether the fee was fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was undesirable; (11) the type of attorney-client relationship and whether the relationship was longstanding; and (12) awards made in similar cases." *Dickey's Barbecue Pit, Inc. v. Neighbors*, No. 4:14-CV-484, 2016 WL 3653517, at *2 (E.D. Tex. Jan. 9, 2016) (Clark, J.) (citing *Johnson*, 488 F.2d at 717–19).
[55] Creedon PLLC Invoice, Doc. No. 71-15 at 3.
[56] Pl.'s Resp., Doc. No. 71 at 30.
[57] Decl. James H. Creedon. Doc. No. 71-15.
[58] Att'y Fee Invoices, Doc. No. 71-15 at 3–4.

Three attorneys from Creedon PLLC performed 33.2 hours of work resulting in fees of $11,577.50. James A. Creedon, a principal at Creedon PLLC with thirteen years of intellectual property litigation experience,[59] performed .5 hours of work at a billing rate of $500 per hour. Christopher Harbin, a principal at Creedon PLLC,[60] performed 7 hours of work at a billing rate of $425 per hour. Charles Wallace, an associate at Creedon PLLC with five years of intellectual property experience,[61] performed 25.7 hours of work at a billing rate of $325 per hour.

The total hours spent to prosecute this case are reasonable. The attorneys exercised billing judgment by providing detailed invoices for all the hours spent. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

Further, the rates Viahart's counsel charged are reasonable. Under the State Bar 2015 Fact Sheet—a document other courts have referenced in attorneys' fees analyses[62]—the average hourly rate for an intellectual property attorney in the Tyler area in 2015 was $350 per hour.[63] Viahart incurred an average rate of $348.72 per hour."[64] The rates Viahart's attorneys charged—$325 to $500—are standard, reasonable rates for attorneys practicing intellectual property law in the Eastern District of Texas.[65] Finally, none of the *Johnson* factors requires the lodestar amount to be adjusted. Consequently, the time Viahart's counsel spent and rates it billed were not unreasonable under Fifth Circuit fee standards. Therefore, the undersigned finds that Viahart is entitled to

---

[59] *Id.* at ¶ 4.

[60] *Id.* at ¶ 5.

[61] *Id.* at ¶ 5.

[62] *See, e.g.*, *Alvarez v. McCarthy*, No. 6:16-CV-00172-ADA, 2020 WL 4434937, at *3 (W.D. Tex. July 31, 2020) (collecting cases).

[63] State Bar of Texas Department of Research and Analysis, 2015 Hourly Rate Fact Sheet at 10, 15.

[64] Pl.'s Resp., Doc. No. 71-15 at   ¶¶ 6,7.

[65] *See, e.g.*, *Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17-CV-546, 2020 WL 1902530, at *15–16 (E.D. Tex. Jan. 13, 2020) (Craven, J.), *report and recommendation adopted*, No. 4:17-CV-546, 2020 WL 896674 (E.D. Tex. Feb. 25, 2020) (Mazzant, J.) (finding rates for intellectual property lawyers of $295 to $580 to be reasonable).

$11,577.50 in attorney's fees and **RECOMMENDS GRANTING** Viahart's request for attorney's fees.

**RECOMMENDATION**

For the foregoing reasons, the Court **RECOMMENDS DENYING** Defendant's Motion to Vacate the Default Judgment and Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 68), and **RECOMMENDS GRANTING** Viahart's request for attorney's fees.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 18th day of July, 2022.


K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE